UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EZELL A.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-1993-JMS-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Ezell A. filed for supplemental security income ("SSI") from the Social Security Administration ("SSA") on September 26, 2017, alleging an onset date of October 1, 2010. [Filing No. 10-3 at 1.] His application was denied initially, [Filing No. 10-2 at 51-60], and upon reconsideration, [Filing No. 10-2 at 61-73]. Administrative Law Judge ("ALJ") Monica LaPolt conducted a hearing on July 22, 2019, [Filing No. 10-2 at 28-50], before issuing a decision on August 21, 2019, concluding that Ezell A. was not entitled to receive benefits, [Filing No. 10-2 at 15-22]. The Appeals Council denied review on June 8, 2020. [Filing No. 10-2 at 1.] Ezell A. timely filed this civil action asking the Court to review the denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

1

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[3]  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning SSI and disability insurance benefits ("DIB"), which are identical in most respects.  Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520.  227 F.3d at 868.  Generally, a verbatim section exists establishing the same legal point with both types of benefits.  *See, e.g.*, 20 C.F.R. § 416.920.  The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Ezell A. was 51 years old on his application date. [*See* Filing No. 10-3 at 1.] He alleged a disability beginning on October 1, 2010 due to precancer of the esophagus and digestive system issues. [Filing No. 10-2 at 53; Filing No. 10-3 at 23.][4]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Ezell A. was not disabled. [Filing No. 10-2 at 15-22.] Specifically, the ALJ found as follows:

- At Step One, Ezell A. had not engaged in substantial gainful activity[5] since September 6, 2017, the application date. [Filing No. 10-2 at 17.]

- At Step Two, Ezell A. has the following severe impairments: cyclic vomiting, chronic abdominal pain, and mild to moderate osteoarthritis of the left shoulder. [Filing No. 10-2 at 17.]

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 10-2 at 17-18.]

- After Step Three but before Step Four, Ezell A. had the RFC "to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. No climbing of ladders, ropes, or scaffolds. He can frequently reach overhead with the left upper extremity. He can occasionally push/pull with the bilateral upper extremities." [Filing No. 10-2 at 18.]

- At Step Four, Ezell A. has no past relevant work. [Filing No. 10-2 at 20.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Ezell A.'s age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that he can perform, such as collator operator, routing clerk, and bench assembler. [Filing No. 10-2 at 20-21.]

### III.
#### DISCUSSION

Ezell A. argues that the ALJ's decision should be reversed for three reasons, which the Court reorders as follows: (1) the ALJ erred at Step Three by failing to properly analyze the evidence and by failing to obtain a medical expert opinion as to whether Ezell A.'s condition equaled the requirements of Listing 5.00; (2) the ALJ failed to abide by the requirements of Social Security Ruling ("SSR") 16-3p in discrediting Ezell A.'s testimony regarding his symptoms; and (3) the ALJ did not adequately explain the rationale behind her RFC determination and did not account for all of the limitations supported by the medical evidence. [Filing No. 12.]   Upon review, the Court concludes that the ALJ erred in all of these respects and failed to build a "logical bridge" from the evidence to her conclusion. And, although one finding of error would be sufficient on its own to warrant reversal and remand, given that the errors are related and in the interest of ensuring that all matters are appropriately addressed on remand, the Court will briefly explain each error below.

5

### A. Whether the ALJ Erred at Step Three

Ezell A. argues that, "[i]n light of the evidence and the rare and complex nature of [his] disease," the ALJ erred in failing to provide a meaningful discussion or whether his condition medically equaled Listing 5.00 relating to the digestive system. [Filing No. 12 at 19-21.] Ezell A. asserts that, pursuant to SSR 17-2p, the ALJ's medical equivalence finding must be supported by one of the following: (1) a prior administrative finding from a medical consultant at the initial or reconsideration level; (2) medical expert evidence obtained at the hearing level; or (3) a report from the Appeals Council medical support staff. [Filing No. 12 at 19.] Ezell A. points out that the last medical consultant to view his medical records did so in March 2018 at the reconsideration level, and that consultant's finding of no severe impairments is inadequate because it did not consider his conditions under any listings. [Filing No. 12 at 20-21 (citing Filing No. 10-2 at 58; Filing No. 10-2 at 67).] Accordingly, he asserts, "[t]here has been no medical opinion provided as to the possibility of [his] rare and complex digestive impairments equaling a listing," and the ALJ simply assumed the lack of equivalency without any relevant discussion. [Filing No. 12 at 21.] Ezell A. asserts that the ALJ was impermissibly "playing doctor" by substituting her own judgment for a medical opinion and that she failed to build a logical bridge from the evidence to her medical equivalency conclusion. [Filing No. 12 at 21-22.]

The Commissioner responds that the ALJ sufficiently articulated and supported her Step Three finding. [Filing No. 14 at 5-9.] Specifically, the Commissioner argues that the ALJ referred to Listing 5.00 by name and considered its requirements generally, as there is no listing that specifically pertains to Ezell A.'s cyclic vomiting, chronic abdominal pain, and related impairments. [Filing No. 14 at 6.] The Commissioner further argues that the ALJ's Step Three

findings, in combination with her subsequent RFC analysis, constitute sufficient articulation supporting the decision regarding medical equivalence. [Filing No. 14 at 6.] The Commissioner contends that Ezell A. points to no evidence in the record showing how his impairments met or medically equaled all of the requirements for Listing 5.00 or any related listing, even though he has the burden of showing that his impairments were equal in severity and duration to the symptoms and findings for a specific impairment. [Filing No. 14 at 7-8.] The Commissioner asserts that Ezell A. is mistaken in his argument that no medical opinion in the record addresses the medical equivalency issue because: (1) at the reconsideration level, "Dr. Rutherford completed a Disability Transmittal Sheet and provided an RFC opinion for a restricted range of light work, which he would not have done had he found medical equivalence"; and (2) Seventh Circuit precedent establishes that the signature of a state agency medical consultant on a Disability Determination and Transmittal form constitutes a medical opinion on the issue of medical equivalence. [Filing No. 14 at 8-9 (citing Filing No. 10-2 at 68-70; *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004)).]

Ezell A. does not specifically address this issue in his reply, and just generally asserts that the Commissioner's response brief impermissibly attempts to provide post hoc rationalizations for the ALJ's decision. [*See* Filing No. 15.]

Regarding Ezell A.'s stomach issues, the ALJ's Step Three analysis states, in its entirety: "With respect to the claimant's cyclic vomiting and chronic abdominal pain, I considered the listings at 5.00 relating to the digestive system. Although there is no specific listing for those conditions, I considered their effects when evaluating the claimant's impairments under the listings." [Filing No. 10-2 at 18.]

In *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004), the claimant argued that his back condition was medically equal to a specific listing and therefore the ALJ erred in failing to find him disabled at Step Three. The Seventh Circuit rejected the claimant's argument, noting that the ALJ had relied on the reports of two state agency physicians, that "[t]hose physicians filled out Disability Determination and Transmittal forms and stated that [the claimant] was not disabled," and that "[t]hese forms conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Id.* (citing *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989); 61 Fed. Reg. 34466) (alteration in original).

It is true that there is no specific listing within Listing 5.00 for digestive system disorders for "cyclic vomiting" or "chronic abdominal pain." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. But that does not preclude the ALJ from considering whether those conditions medically equal a listed impairment. *See*, *e.g.*, *Sullivan v. Zebley*, 493 U.S. 521, 531 & n. 10 (1990) (explaining that where a claimant's impairment is not specifically listed, he must establish medical equivalence by "present[ing] medical findings equal in severity to all the criteria for the one most similar listed impairment").

As for Ezell A.'s argument that a medical opinion on the issue of medical equivalence was never considered, the Court notes that at both the initial and reconsideration levels, the state agency medical consultants did not consider any listings or any potential medical equivalence because they concluded that Ezell A.'s impairments were not severe. [Filing No. 10-2 at 58; Filing No. 10-2 at 67.] It is not clear from the *Scheck* decision whether state agency consultants in that case specifically considered the listings or the possibility of medical equivalence in determining that the claimant was not disabled. *See* 357 F.3d at 700. But the Court concludes

8

that Disability Determination and Transmittal forms that do not address the listings cannot be relied upon as a medical opinion on the issue of equivalence.

In any event, the ALJ's Step Three analysis is flawed because it is perfunctory and underdeveloped. *See Barnett v. Barnhart*, 381 F.3d 664, 668-70 (7th Cir. 2004) (noting that "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing," and concluding that the ALJ's "two-sentence consideration of the Listing of Impairments is inadequate and warrants remand"). The ALJ's Step Three analysis is not sufficient to permit the Court to trace the ALJ's reasoning and conclude that a "logical bridge" exists between the evidence and the conclusion. As an initial matter, of Ezell A.'s numerous diagnoses related to his digestive system—including achalasia,[6] gastroesophageal reflux disease, Barrett's esophagus – short segment 1 centimeter, bowel obstruction, gastritis, colon polyps, constipation, diverticulosis, hemorrhoids, family history of stomach cancer, abnormal abdominal imaging, non-cardiac chest pain, persistent nausea with vomiting, and nodule at GEJ on EGD [*see, e.g.*, Filing No. 10-4 at 1-2; Filing No. 10-4 at 116; Filing No. 10-5 at 37; Filing No. 10-5 at 120-21]—the ALJ focused only on "cyclic vomiting" and "chronic abdominal pain" without explanation. [*See also* Filing No. 10-2 at 19 (ALJ acknowledging that "[t]he medical records document a long history of gastrointestinal issues going back to the claimant's childhood"). Moreover, the ALJ's discussion of the listings relating to the digestive system is limited to the statement that she "considered [the effects of cyclic vomiting and chronic abdominal pain] when evaluating the claimant's impairments under the listings." [Filing No. 10-2 at 18.] It is entirely

---

[6] "Achalasia is a rare disorder that makes it difficult for food and liquid to pass from [the esophagus] into [the] stomach," as a result of damage to the nerves in the esophagus. *Achalasia*, MAYO CLINIC, available at https://www.mayoclinic.org/diseases-conditions/achalasia/symptoms-causes/syc-20352850 (last visited Sept. 21, 2021).

unclear from the ALJ's analysis how and to what extent she considered Ezell A.'s digestive issues and the associated symptoms in considering the potentially applicable listings. S*ee Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015) ("We cannot discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider, this pertinent evidence."). This is reversible error.

The Commissioner essentially argues that the ALJ's subsequent RFC analysis provides the necessary detail to support her Step Three finding. [*See* Filing No. 14 at 6 (asserting that the ALJ's "articulation of the reasons why the claimant is not disabled at a later step in the sequential evaluation process does provide sufficient rationale for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at Step Three") (emphasis omitted).] But for the reasons articulated below, the ALJ's RFC analysis and consideration of subjective complaints are also flawed, and therefore do not save her vague and perfunctory discussion of the listings.

### B. Whether the ALJ Failed to Comply with SSR 16-3p

Ezell A. argues that the ALJ did not comply with SSR 16-3p because she provided only a very brief summary of the medical evidence, discussed the weight given to the state agency medical consultant opinions, and listed Ezell A.'s daily activities, but "[o]ther than this, there is no inclusion of the factors of SSR 16-3p in the decision. [Filing No. 12 at 14-15.] According to Ezell A., the ALJ must explain any purported inconsistencies between the claimant's daily activities, his subjective complaints, and the medical evidence of record. [Filing No. 12 at 15.] Ezell A. argues that "no attempt to satisfy the requirements of SSR 16-3p was made," and by failing to acknowledge the serious symptoms he experiences, the ALJ has skirted her duties to consider all of the evidence, and this error requires remand. [Filing No. 12 at 16.]

The Commissioner responds that the ALJ's subjective symptom analysis was not patently wrong. [Filing No. 14 at 10-16.] The Commissioner points out that the ALJ expressly acknowledged Ezell A.'s long history of gastrointestinal issues dating back to childhood, "reasonably found that since the application date, treatment was generally conservative with pain medications and proton-pump inhibitors," that physical examinations were largely negative with no abdominal tenderness noted at multiple appointments, and that Ezell A. had not reported side effects of his medications to his treatment providers. [Filing No. 14 at 10-11.] The Commissioner contends that there is no indication that the ALJ equated Ezell A.'s activities of daily living with the ability to sustain full time work or that she "placed any undue emphasis on" those activities. [Filing No. 14 at 11-12.] The Commissioner further argues that Ezell A.'s contentions of error "are either undeveloped or misplaced," and he points to no evidence that the ALJ overlooked or that would support a finding of disability, which is his burden to do. [Filing No. 14 at 12-14.] The Commissioner asserts that Ezell A. points to no factors in SSR 16-3p that the ALJ overlooked, does not explain how the ALJ "cherry picked" certain facts while ignoring others, and can point to no logical flaws in the ALJ's analysis. [Filing No. 14 at 13-16.]

Ezell A. did not specifically address this issue in his reply. [*See* Filing No. 15.]

Pursuant to SSR 16-3p, an ALJ must first determine whether there is an underlying medical impairment that could reasonably be expected to produce an individual's symptoms, such as pain. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Then, once an underlying impairment has been established, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. at *4. In doing so, the ALJ must consider

objective medical evidence, the individual's own statements, and evidence from non-medical sources, considering the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id*. at \*4-\*8.

At the hearing, Ezell A. explained that he had a portion of his esophagus removed when he was a teenager, and now he has problems maintaining the proper level of stomach acids and has spasms of varying degrees, that "can go from like a mild sharpness . . . like a knife, to like a Charlie horse . . . to where it's so severe, where no medicine or nothing is gonna . . . help it." [Filing No. 10-2 at 39-40.] In addition, he stated that every month or twice a month he has "reverse bowel," which causes symptoms similar to food poisoning and vomiting and diarrhea "for about seven to ten hours straight." [Filing No. 10-2 at 40.] These episodes leave him feeling weak and tired for about three days, force him to consume only liquids for two days, and cause him to lose weight. [Filing No. 10-2 at 42.] Ezell A. stated that, due to his achalasia, he has cramping daily at varying levels of intensity, has trouble breathing, and gets fatigued. [Filing No. 10-2 at 41.] He stated that he experiences nausea daily, varying in severity, which causes him to feel weak, prevents him from eating, and prevents him from getting proper nutrition. [Filing No. 10-2 at 44.] He testified that he takes medications to control his stomach acid, for nausea, and for pain. [Filing No. 10-2 at 36.] He stated that during the day he "sit[s] around,"

12

watches television, and reads, and he tries to help his son (whom he lives with) with household chores but is generally unable to help much because he is in pain and fatigued. [Filing No. 10-2 at 38.]

Regarding Ezell A.'s subjective complaints of symptoms, the ALJ first found that Ezell A.'s medically determinable impairments could reasonably be expected to cause the symptoms he alleged at the hearing, including "esophageal spasms of varying intensity, daily cramping and nausea, difficulty breathing, constant pain, fatigue, and vomiting and diarrhea for several hours once or twice a month that leaves him feeling weak and tired for three days." [Filing No. 10-2 at 18.]  The ALJ then concluded that Ezell A.'s "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 10-2 at 18.] The ALJ then summarized Ezell A.'s medical records, emphasizing that "treatment has generally been conservative with pain medications and proton-pump inhibitors," that many physical exams resulted in normal findings with no abdominal tenderness, and that medical records did not document reported side effects from his medications. [Filing No. 10-2 at 19-20.]  The ALJ then reviewed Ezell A.'s daily activities and work history, including self-employment from 2010 to 2016 and work as a barber in 2017. [Filing No. 10-2 at 20.]  Finally, the ALJ considered the opinions from the state agency medical consultants. [Filing No. 10-2 at 20.]  She found that the opinion provided at the initial level was "unpersuasive," and the opinion provided at the reconsideration level was "somewhat persuasive" to the extent that it was consistent with the record evidence and limited Ezell A. to light work, although the ALJ "[found] that the claimant has some other limitations based on such evidence." [Filing No. 10-2 at 20.]

The ALJ was not specific about why she did not fully credit Ezell A.'s testimony concerning his symptoms, beyond that it was "not entirely consistent with the medical evidence and other evidence in the record." [Filing No. 10-2 at 18.] Of particular significance, the ALJ did not explain why she apparently did not believe that Ezell A. has monthly (or more frequent) episodes of vomiting from which it takes him several days to recover. Although some of the medical evidence suggests "normal" results and a lack of abdominal pain, nothing in the cited medical evidence contradicts Ezell A.'s complaints relating to his vomiting episodes. Indeed, persistent vomiting is noted in his medical records. [*See*, *e.g.*, Filing No. 10-4 at 59 ("Since patient[']s last visit symptoms have not improved. Associated symptoms include abdominal pain[,] nausea[,] and vomiting. . . . [A]ny food intake seems to make it worse . . . ."); Filing No. 10-5 at 30 (noting "Nausea with vomiting"); Filing No. 10-5 at 72 (noting "Intractable cyclical vomiting with nausea"); Filing No. 10-5 at 97 (noting that "the patient has developed new vomiting and nausea"); Filing No. 10-5 at 98 (noting complaints of vomiting); Filing No. 10-5 at 102 (noting nausea and vomiting); Filing No. 10-5 at 107 (noting cyclical vomiting).] And, although the ALJ emphasizes the lack of abdominal pain in some treatment notes, it is not clear whether a lack of abdominal pain corresponds with a lack of other symptoms alleged by Ezell A. [*See*, *e.g.*, Filing No. 10-5 at 2 (indicating that Ezell A. reported pain "in the epigastric area and also behind his breast bone," that when the pain occurs "it is very severe," and that Ezell A. "has to stop working and lay down for an hour or so, till (sic) the pain is relieved" (capitalization removed)); Filing No. 10-5 at 5 (same); Filing No. 10-5 at 11 (same); Filing No. 10-5 at 107 ("Patient reports pain in the throat and chest.").] Furthermore, the ALJ did not explain why she ignored many medical records indicating complaints of abdominal pain. [*See, e.g.*, Filing No. 10-5 at 96 ("Patient presents in the clinic today for initial evaluation and management of throat

and abdominal pain. . . . Describes the pain as aching, cramping, burning, shocklike, stabbing, sharp, and tingling,  Rates the pain as 7/10 right now and 10/10 at its worst."); Filing No. 10-5 at 97 (patient reporting current pain at 7, worst pain at 10, minimum pain at 5, and average pain at 8, and noting that pain is "located in the throat to the rectum"); Filing No. 10-5 at 102 (noting that chest and abdominal pain had not improved); Filing No. 10-5 at 107 (noting worsening pain).]

"An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).  The ALJ's discussion of Ezell A.'s subjective symptoms was inadequate in that she did not sufficiently articulate her reasoning for discrediting certain portions of Ezell A.'s testimony, despite the fact that it was supported by medical evidence and there was no medical or other evidence to the contrary.  This error requires remand.  *See Hostetter v. Saul*, 841 F. App'x 983, 986-87 (7th Cir. 2021) (observing that "[t]he 'not entirely consistent' language is meaningless and a problem[] . . . if the ALJ does not identify and explain the relevant inconsistencies or other reasons for discounting the subjective complaints")

### C.  Whether the ALJ's RFC Determination was Supported by Substantial Evidence

Ezell A. argues that the ALJ never explained the rationale behind her RFC finding. [Filing No. 12 at 17.]  Specifically, he asserts that the ALJ omitted any consideration of the limitations resulting from his chronic pain and recurrent episodes of nausea and vomiting and never discussed whether he would be able to sustain employment in light of having to miss one to two days of work per month "where he spends the entire day vomiting and several more days recovering."  [Filing No. 12 at 17.]

In response, the Commissioner argues that because the ALJ provided a narrative discussion of the medical and nonmedical evidence and assessed Ezell A.'s abilities in accordance with relevant authorities, the RFC finding did not overlook any of Ezell A.'s limitations. [Filing No. 14 at 16.] The Commissioner contends that the ALJ did not just consider isolated normal medical findings or disregard an entire line of evidence, but instead "analyzed the record evidence and stated all of the evidence that supported her RFC finding." [Filing No. 14 at 17.] According to the Commissioner, the ALJ did not overlook Ezell A.'s chronic pain or recurrent episodes of nausea and vomiting, considered his subjective complaints throughout the RFC analysis, and was not obligated to "find that the record showed his symptoms to be as limiting as he claimed." [Filing No. 14 at 17-18.] The Commissioner argues that Ezell A. is incorrect in his contention that SSR 96-8p mandates a function-by-function assessment, and Ezell A. has not adequately supported his arguments that the ALJ did not sufficiently explain the rationale behind her RFC determination.

Ezell A. did not specifically address this issue in his reply. [*See* Filing No. 15.]

The ALJ's RFC determination suffers from a similar defect as her subjective symptoms analysis: she failed to account for the potential effects of Ezell A.'s vomiting episodes on his ability to sustain employment. Although the Commissioner is correct that the ALJ was not required to find that Ezell A. was as limited by his symptoms as he claimed to be, the ALJ was required, as explained above, to articulate why she made such a finding (if, in fact, she did). The VE testified that an individual cannot sustain gainful unskilled employment in a competitive work environment if he is required to miss more than one day of work per month on an ongoing basis. [Filing No. 10-2 at 47.] Because this issue was not addressed in the ALJ's discussion, her decision cannot stand.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **REVERSES** the ALJ's decision denying Ezell A. benefits and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this decision. Final judgment shall issue accordingly.

Date: 9/22/2021

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**